# HACH ROSE SCHIRRIPA & CHEVERIE LLP
## ATTORNEYS AT LAW

October 17, 2016

**VIA ECF**

The Honorable Marilyn D. Go
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201
Fax: (718) 613-2555

> **Re:** ***Joshua Springer v. Liberty Pest Specialists, Inc.***, No. 15-cv-5883 (SJ) (MDG)

Dear Judge Go:

As you know, we represent Plaintiff Joshua Springer and Opt-in Plaintiffs Christopher Zayas-Bazan and Henry Sanchez in the above-referenced action against Liberty Pest Specialists, Inc. and write to seek approval of the parties' agreement to settle Plaintiffs' claims, which include claims for unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), as well as claims for failure to timely pay wages and for unpaid overtime wages under the New York Labor Law ("NYLL"). We write to respectfully request that the Court approve the settlement and allow the parties to discontinue the matter with prejudice pursuant to Fed. R. Civ. P. 41. Copies of the parties' executed Settlement Agreements are annexed hereto. Defendant does not oppose this request.

As explained in further detail below, we respectfully aver that the proposed settlement agreement is fair, reasonable, and equitable.

### Background

As the Court is aware, this matter arises out of Plaintiff Joshua Springer's ("Springer") and Opt-In Plaintiffs Christopher Zayas-Bazan ("Zayas-Bazan") and Henry Sanchez ("Sanchez") (collectively "Plaintiffs") claims against their former employer, Liberty Pest Specialists, Inc. d/b/a Liberty Pest Control ("Liberty Pest" or "Defendant").

Springer's claim is based on his employment with Liberty Pest from April 5, 2014 to August 16, 2014. Springer estimates that throughout his employment he worked approximately 72 hours per week, including numerous double shifts. Springer claims that Defendant did not pay him overtime wages for the time he worked in excess of 40 hours per week. Defendant also failed to provide Springer with the required wage statements and notices. As a result, Springer claims he is owed wages for unpaid overtime wages.

Zayas-Bazan's claim is based on employment from June 28, 2014 to August 22, 2014. Zaas-Bazan claims that throughout his employment he worked approximately 72 hours per week, including numerous double shifts. Zayas-Bazan claims that Defendant did not pay him overtime wages for the time he worked in excess of 40 hours per week. Defendant also failed to provide

Hon. Marilyn D. Go
October 17, 2016
Page 2

Zayas-Bazan with the required wage statements and notices. As a result, Zayas-Bazan claims he is owed wages for unpaid overtime wages.

Sanchez's claim is based on employment from February 2014 to December 2014. Sanchez claims that from February 2014 through May 2014, he worked approximately 50 hours per week, including numerous double shifts. Sanchez claims that Defendant did not pay him overtime wages for the time he worked in excess of 40 hours per week. Defendant also failed to provide Sanchez with the required wage statements and notices. As a result, Sanchez claims he is owed wages for unpaid overtime wages.

On October 13, 2015, Springer filed suit against Defendant asserting causes of action based on denial of overtime pay in violation of the FLSA and failure to timely pay wages and overtime under the NYLL. Additionally, Springer alleged that Defendant violated the notice and record-keeping requirements imposed by New York Labor Law ("NYLL") §§ 195(1) and 195(3). Springer also brought suit on behalf of all other potential collective plaintiffs who may have had similar claims. Plaintiff Zayas-Bazan filed consent to join this action on December 29, 2015 (Dkt. 21). On January 9, 2016, Defendant filed a motion to dismiss Plaintiffs' complaint for failure to state a claim. On February 3, 2016, the parties appeared before the Hon. Sterling Johnson, Jr., at which time the Court set a briefing schedule for Plaintiffs' anticipated Motion to Certify a Class pursuant to Section 216(b) of the FLSA ("216(b) Motion"). During a subsequent conference on March 24, 2016, Judge Johnson denied Defendant's motion to dismiss and stayed Plaintiffs' 216(b) Motion. On August 8, 2016, Judge Johnson issued an Order terminating Plaintiffs' 216(b) Motion, with leave to re-file when the stay was lifted by the Court. Plaintiff Sanchez filed consent to join this action on July, 15 2016 (Dkt. 56).

The parties engaged in extensive discovery, including reviewing hundreds of pages of documents and conducting the depositions of Plaintiffs Springer and Zayas-Bazan. The parties subsequently appeared before Your Honor for a settlement conference on July 19, 2016, with further discussions conducted before Your Honor via telephone on July 26, 2016.

At the commencement of the settlement conference, the parties expressed drastically opposing views on the likely outcome of the trial of this matter, however the parties engaged in good faith negotiations over the course of weeks and ultimately agreed to a fair and reasonable settlement. While the parties have agreed to amicably resolve this matter, the parties disagree as to the amount of hours worked by Plaintiffs and, ultimately whether Plaintiffs are entitled to overtime wages. Nevertheless, the agreed to settlement represents a substantial portion of the compensatory damages Plaintiffs claim they are owed, and significantly more compensation than Defendant believes each Plaintiff is owed. The settlement reflects a mutual desire to reach a resolution in this matter without significant risk of a trial. The amount agreed upon also reflects a significant discount to Defendant if Plaintiffs were to succeed at trial, particularly as Plaintiffs would seek liquidated damages, pre-judgment interest, and attorneys' fees. Plaintiffs Springer and Zayas-Bazan personally appeared at July 19, 2016 the settlement conference before your honor and were involved in all subsequent settlement discussions. Plaintiffs Springer, Zayas-Bazan, and Sanchez personally approved the settlement terms discussed herein. *See* Executed Settlement Agreements annexed hereto.

Hon. Marilyn D. Go
October 17, 2016
Page 3

### The Proposed Settlement Should Be Approved

The parties' proposed settlement agreement warrants approval as it is fair, reasonable, and equitable. Indeed, the agreement reflects a reasonable compromise of Plaintiffs' FLSA and NYLL claims rather than a mere waiver of statutory rights brought about by Defendant's overreaching. Here, there is no doubt that the settlement did not come about because of "overreaching" by Defendant. To the contrary, Plaintiffs are represented by competent counsel and the settlement amount, $60,000.00, results in a recovery to Plaintiffs, after expenses and proposed attorneys' fees[1], of $20,000.00 to Springer, $13,704.12 to Zayas-Bazan, and $5,000 to Sanchez. These sums are fair and reasonable given the drastic disparity between Plaintiffs' estimated claims and Defendant's estimated defense, which included numerous Rule 68 Offers that were not accepted by Springer or Zayas-Bazan, as well as the substantial risk that Plaintiffs would not prevail on their unpaid overtime and wage notice violation claims at trial.

The proposed settlement is also the product of negotiation between represented parties following extensive settlement discussions. Plaintiffs and Defendant hold opposing views on the merit and value of Plaintiffs' claims; however, the arm's length bargaining between the represented parties, along with the information shared during settlement negotiations, weighs in favor of finding the settlement reasonable. Moreover, nothing in the record before the Court indicates that the proposed settlement has been achieved through fraudulent or collusive conduct. Through discovery, the parties have gathered and exchanged all available information relevant to the claims and defenses in this matter, and can therefore accurately assess the strengths and weaknesses of the asserted claims and their respective positions. *See, e.g., Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) ("In considering whether a settlement is fair and reasonable, the principal question is 'whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching'"); *Aponte v. Comprehensive Health Mgmt., Inc.,* 2013 U.S. Dist. LEXIS 47637, at *12 (S.D.N.Y. Apr. 2, 2013) (Courts typically "regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement.") (citation and internal quotation marks omitted). Furthermore, since Plaintiff is no longer employed by Defendants, coercion is unlikely. *See, e.g., Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012); *Cisneros v. Schnipper Rest. LLC,* 2014 U.S. Dist. LEXIS 2111, at *2-3 (S.D.N.Y. Jan. 8, 2014) ("Although the FLSA places strict limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver, these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here.") (citation and internal quotation marks omitted); *Martinez v. Ragtime Foods of N.Y., Inc.*, 2011 U.S. Dist. LEXIS 130357, at *3 (E.D.N.Y. Nov. 10, 2011); *Brown v. Mustang Sally's Spirits & Grill, Inc.*, 2013 U.S. Dist. LEXIS 13482 (W.D.N.Y. Jan. 30, 2013).

Additionally, no factors weigh against allowing the settlement to proceed as requested: (i) Plaintiffs' alleged injuries will not recur as Plaintiffs are no longer employed by Defendants; (ii) Defendant explicitly denies any wrongdoing, and have no "history of FLSA non-compliance"; and (iii) continuing to develop the record will only serve to enlarge costs on both sides and will not

---

[1] The expenses on this matter, which include depositions, are $2,232.68 and the attorney's fees are a 1/3 contingency fee of the net settlement after expenses or 1/3 of $57,767.32 totaling $19,063.22.

HRSC LLP

serve any useful purpose in light of Defendant's lack of a history of non-compliance or any identified industry-wide practice. *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012).

Lastly, the settlement amount is a reasonable compromise of all parties' positions, and the proposed amount of attorneys' fees is also fair and reasonable as Plaintiffs' counsel's own compensation does not adversely affect the extent of the relief obtained by counsel on behalf of Plaintiffs. *See Wolinsky*, 900 F. Supp. 2d at 336-37; *Cisek v Natl. Surface Cleaning, Inc.*, 954 F. Supp. 110, 111 (S.D.N.Y. 1997) (finding that the sum sought by plaintiffs' counsel was reasonable, the settlement was untainted by conflict of interest and there was "no reason to conclude that plaintiffs' counsel benefited at the expense of their clients"). Thus, the settlement does not favor Plaintiffs' counsel over Plaintiffs. *Mireku v. Red Vision Sys., Inc.*, 2013 U.S. Dist. LEXIS 172102, at *10 (S.D.N.Y. Dec. 6, 2013) (amount of fees "is of little consequence when fees are consensual") (citation and internal quotation marks omitted). ; *see also Chapman-Green v. Icahn House West LLC*, 2013 U.S. Dist. LEXIS 25671 (S.D.N.Y. Feb. 21, 2013).

Under the proposed agreement, Plaintiffs' counsel would recover $2,232.68 as reimbursement for costs and $19,063.22 in fees. Under Plaintiffs' contingency fee engagement agreement, Plaintiffs' counsel is entitled to recover out of Plaintiffs' settlement amount fees totaling one-third of the net recovery after reimbursement of expenses. This fee should be approved, as "[a]n award of one third of the fund is consistent with what reasonable, paying clients pay in contingency employment cases." *Flores v. Anjost Corp.*, 2014 U.S. Dist. LEXIS 11026, at *25 (S.D.N.Y. Jan. 28, 2014); *see also Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 U.S. Dist. LEXIS 134207, at *4 (E.D.N.Y. Sept. 19, 2013) ("Pursuant to plaintiff's retainer agreement with counsel, the fee is one-third of the settlement amount, plus costs. This fee arrangement is routinely approved by courts in this Circuit."). The proposed fee award of a third should also be approved because it was consensual and agreed to by Plaintiff. *See Mireku v. Red Vision Sys., Inc.*, 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. Dec. 6, 2013) (approving settlement and noting the consensual nature of the fee arrangement). Finally, the requested fee is particularly reasonable in light of Plaintiffs' recovery *after fees* of a significant portion of their claimed compensation and significantly more than Defendant believes would be the value of Plaintiffs' claims. *See Chapman-Green*, 2013 U.S. Dist. LEXIS 25671, at *7 (approving settlement where plaintiffs received "nearly 90 percent of the wages that they claim they were owed").

Moreover, based on the number of hours Plaintiffs' counsel has expended on this matter, Plaintiffs' counsel's fee of $19,063.22 is significantly lower than the fees Plaintiffs' counsel would have charged based on its standard hourly rates. Plaintiffs' counsel has spent considerable time on this matter, including investigating and drafting pleadings, participating in several in-person and telephonic conferences with the Court; opposing Defendant's motion to dismiss; researching and drafting a motion for class certification; reviewing hundreds of pages of documents produced in response to written discovery requests; preparing for and defending Plaintiffs' depositions, preparing for Defendant's deposition, and preparing for and participating in multiple settlement conferences. Plaintiffs' counsel's rates range from $350.00 per hour to $500.00 per hour for a

Hon. Marilyn D. Go
October 17, 2016
Page 5

matter such as this.[2] Accordingly, the fees that Plaintiffs' counsel seeks in this matter are significantly less than what Plaintiffs' counsel would charge based on its standard hourly rates, and are therefore more than fair to Plaintiffs.

Accordingly, the Plaintiffs respectfully request judicial approval of the parties' proposed settlement agreement, and further request to be allowed to submit a stipulation of dismissal with prejudice consistent with the requirements of Fed. R. Civ. P. 41(1)(a)(ii). Again, Defendant does not oppose this request.

Respectfully submitted,

Frank R. Schirripa

cc:     Counsel for Defendant
        Gary Rosen, Esq. (*via* ECF)

---

[2] While the Court has not specifically requested that Plaintiffs' counsel provide detailed time summaries, it is respectfully submitted that in this case, such records should not be required by the Court. "[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Goldberger*, 209 F.3d at 50. *See also Rite Aid*, 396 F.3d at 306-07 (in performing lodestar cross-check calculation, "[t]he district courts may rely on summaries submitted by the attorneys and need not review actual billing records")".*Davis v. J.P. Morgan Chase & Co.,* 827 F. Supp. 2d 172, 2011 U.S. Dist. LEXIS 117082 (W.D.N.Y. 2011). If the Court were to use the lodestar method at a rate of even $350.00 per hour, the Court, based on its familiarity with the case, can clearly identify that the fees sought are more than reasonable and the time expended on this case would clearly exceed any lodestar calculation. Should the Court require full records of Plaintiffs' counsel's time, Plaintiffs' counsel will submit such documentation upon request.

HRSC LLP

# EXECUTED SETTLEMENT AGREEMENTS

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

### JOSHUA SPRINGER

**1.** **Parties.** The parties to this Agreement are you, **JOSHUA SPRINGER** (for yourself, your family, beneficiaries and anyone acting for you) (hereinafter "You" or "Plaintiff"), and Liberty Pest Specialists, Inc. d/b/a Liberty Pest Control ("Liberty" or "Defendant").

You and Defendant are presently parties to a lawsuit now pending before the U.S. District Court for the Eastern District of New York, Case No. 15-cv-5883 (SJ)(MDG) entitled Springer, et.al. v. Liberty Pest Specialists, Inc. d/b/a Liberty Pest Control (the "Lawsuit"). You and Defendant are interested in avoiding all further legal costs and disputes and in fully and expeditiously resolving all claims, charges, or issues of law or fact that were or could have been raised by you against Defendant as of the date you sign this Agreement.

**2.** **Consideration.** In complete settlement of all claims that you have or may have against Defendant and subject to the terms below, Liberty agrees to pay You the gross sum of $30,594.97 (the "Settlement Amount") to be paid as follows:

**a.** 10% of the Settlement Amount within 10 days from the date of approval of this Settlement by the Court;

**b.** 10% of the Settlement Amount within 1 month from the date of approval of this Settlement by the Court;

**c.** 10% of the Settlement Amount within 2 months from the date of approval of this Settlement by the Court;

**d.** 10% of the Settlement Amount within 3 months from the date of approval of this Settlement by the Court;

**e.** 10% of the Settlement Amount within 4 months from the date of approval of this Settlement by the Court;

**f.** 10% of the Settlement Amount within 5 months from the date of approval of this Settlement by the Court;

**g.** 10% of the Settlement Amount within 6 months from the date of approval of this Settlement by the Court;

**h.** 10% of the Settlement Amount within 7 months from the date of approval of this Settlement by the Court;

**i.** 10% of the Settlement Amount within 8 months from the date of approval of this Settlement by the Court;

**j.** 10% of the Settlement Amount within 9 months from the date of approval of this Settlement by the Court;

1

and apportioned as follows:

- $10,000.00, minus applicable deductions and withholdings, for lost wages by check made payable to you. Liberty will issue an IRS Form W-2 to you reflecting this payment.

- $10,000.00 for non-wage compensatory or liquidated damages. Defendant's receipt of an IRS Form W-9 completed and executed by you is a condition precedent to this payment. Liberty will issue an IRS Form 1099 to you reflecting this payment.

- $10,594.97 for attorney fees and costs, by check made payable to Hach Rose Schirripa & Cheverie LLP. Defendant's receipt of an IRS Form W-9 completed and executed by Hach Rose Schirripa & Cheverie LLP is a condition precedent to this payment. Liberty will issue an IRS Form 1099 to you and Hach Rose Schirripa & Cheverie LLP reflecting this payment.

You acknowledge that you have not relied on any statements or representations by Defendant or their attorneys with respect to the tax treatment of the payments described in this section. If any taxing body determines that the tax treatment was incorrect and that greater amounts should have been withheld from any payment above (or any part thereof), you acknowledge and assume all responsibility for paying those amounts and further agree to indemnify and hold Defendant harmless for payment of any additional taxes and any interest and penalties thereon.

The parties warrant that they are not aware of any attorneys' liens placed on this matter.

You agree that the payments above are consideration for the promises by you contained herein and that Defendant were not otherwise obligated to make these payments.

Defendant's obligations to make the payments above shall become due thirty (30) business days after the later of: (i) Defendant receive this Agreement executed by you; (ii) Defendant's receive an order approving this settlement and dismissing the Lawsuit; and (iii) any applicable revocation period.

**3.     Court Approval of Settlement Agreement.** The parties agree that the Court's approval of this Agreement as fair and reasonable and the subsequent dismissal of the Lawsuit with prejudice is a condition precedent to Defendant's promises in this Agreement. You understand counsel will jointly submit a motion to the Court for approval of this settlement as fair and reasonable.

**4.     General Release.**

        In consideration of the payments and benefits set forth in Section 3 above, Plaintiff hereby unconditionally and irrevocably releases, waives, discharges and gives up any and all claims against Defendant, their parent and affiliate companies, subsidiaries, divisions, business units, committees, groups, officers, directors, shareholders, employees, successors, assigns, trustees, administrators, and executors (collectively referred to as "RELEASEES"), and releases and forever discharges the RELEASEES and their heirs, executors, administrators, successors, trustees, assigns, subsidiaries, officers, directors, shareholders, employees, legal representatives,

2

and agents of each of them, from all actions, causes of action, and suits, which against the RELEASEES, Plaintiff or Plaintiff's heirs, executors, administrators, successors, and/or assigns, may now have or hereinafter can, shall or may have, for any claims that were brought or could have been brought by Plaintiff against Defendant in the Litigation, including, but not limited to, unpaid wages, minimum wage, overtime pay, expenses, salaries, benefits, commissions, bonuses, or any other work related compensation whatsoever from the beginning of the world to the date that an Order is signed by any presiding United States District Judge or United States Magistrate Judge authorizing the parties to settle this action based on the terms of this Agreement (hereinafter referred to as the "Effective Date"), including, but not limited to, those claims pertaining to severance pay or termination pay, and those arising under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., the New York Labor Law, any New York wage-hour and wage-payment laws, and/or any other federal, state or local wage-hour, wage-payment, or labor laws.

**5.   Release Exclusions/Individual Protections.**  This Agreement's release provisions exclude: claims arising after you sign this Agreement; claims for breach of this Agreement; and claims that cannot be waived, such as for unemployment or worker's compensation. Neither the release provisions above nor anything else in this Agreement limit your rights to file a charge with any administrative agency (such as the U.S. Equal Employment Opportunity Commission or a state fair employment practices agency), provide information to an agency, or otherwise participate in an agency investigation or other administrative proceeding. However, you give up all rights to any money or other individual relief based on any agency or judicial decision, including class or collective action rulings, except that you may receive money properly awarded by the U.S. Securities and Exchange Commission as a securities whistleblower incentive.

**6.   Promise Not To Sue.**  A "promise not to sue" means you promise not to sue any Releasee in court.  This is different from the General Release above.  Besides releasing claims covered by that General Release, you agree never to sue any Releasee for any reason covered by that General Release.  Despite this Promise Not To Sue, however, you may file suit to enforce this Agreement or to challenge its validity under the ADEA.  If you sue a Releasee in violation of this Agreement you shall be required to pay all resulting damages from your breach, as determined by a court or arbitrator.  In that event, Defendant shall be excused from any remaining obligations that exist solely because of this Agreement.

**7.   Whistleblowing.**  You agree that beyond the allegations contained in the Complaint: (i) no one interfered with your ability to report within Liberty possible violations of any law, and (ii) it was Liberty's policy throughout your employment to encourage such reporting.

**8.   Return of Company Property.**  You have returned (or you will before receiving any settlement payments described above) all Liberty's property you possessed or controlled, including but not limited to any confidential information, business equipment, credit cards, keys, software or work product.  Liberty's property includes all originals plus hard copies and electronic versions of all documents, such as e-mails, facsimiles, files, handbooks, letters, manuals, memoranda, power points, records and reports.

**9.   Non-Disparagement.**  Once you have signed this Agreement, you will not do or say anything, directly or indirectly, that disparages, reflects negatively on, or otherwise detrimentally affects Liberty, it's officers, owners, employees, products or its services.

**10. Non-Admission.** Neither Defendant's offer reflected in this Agreement nor any payment under this Agreement are an admission that you have a viable claim against Defendant or any other Releasee. Each Releasee denies all liability.

**11. Applicable Law.** This Agreement shall be interpreted under federal law if that law governs, and otherwise under the laws of the State of New York, without regard to its choice of law provisions.

**12. Dispute Resolution.** Any dispute regarding this Agreement will be resolved in the United States District Court for the Eastern District of New York.

**13. Enforceability.** If a court finds any part of this Agreement unenforceable, that part shall be modified and the rest enforced, except that if a court finds paragraphs 4 or 6 unenforceable, then none of the remaining obligations on Defendant shall be enforced, and monies paid in settlement shall be subject to return to Defendant. If a court finds any such part incapable of being modified, it shall be severed and the rest enforced, except that if a court finds paragraphs 4 or 6 unenforceable as written, then none of the remaining obligations on Defendant shall be enforced, and monies paid in settlement shall be subject to return to Defendant. A decision not to enforce this Agreement does not waive any future violation.

**14. Enforcement.** Nothing in this Agreement limits either party's right to obtain preliminary or permanent injunctive relief if either party breaches this Agreement, plus any additional relief determined to be appropriate.

**15. Medicare Secondary Payer.** Both parties represent that none of the monies paid under this Agreement are for (i) payment of medical expenses incurred by you, or (ii) injuries for which you have received or can receive Medicare or Medicaid benefits. Nothing in this Agreement prevents either party from: (i) communicating information about this Agreement for compliance purposes under the Medicare Secondary Payer law or the Medicare, Medicaid, and SCHIP Extension Act of 2007; or (ii) otherwise complying with these laws.

**16. Entire Agreement.** This Agreement is the complete understanding between you and Defendant. It replaces any other agreements, representations or promises, written or oral .

**17. Time to Consider.** You have been given 21 days to consider this Agreement. You must sign and return this Agreement to Defendant in the time given if you want to get the separation pay/benefits listed at the beginning of this Agreement.

**18. Time to Revoke.** After you sign this Agreement, you have 7 days to revoke it by providing written notice to Defendant's representative signing below. This Agreement is not effective or enforceable until the revocation period expires, and your counsel notifies counsel for Defendant in writing that you have elected to not revoke the Agreement. You hereby authorize your counsel to make such representation on your behalf. If you revoke this Agreement, you will not receive the pay/benefits listed at the beginning of this Agreement.

**19. Neutral Reference.** Liberty's response to a reference request will be limited to your employment dates and last position.

4

20. **Other Representations.** You agree:

- You yourself actually performed work for Liberty as a pest exterminator during the times claimed in this lawsuit.

- You worked for Liberty from approximately April 2014 to August 2014.

- You did not work for Liberty under any other name.

- You no longer work for Liberty.

- You are signing this Agreement in your own legal name and not on behalf of someone else, and you have provided identification of your identity acceptable to Defendant.

- With the settlement payments noted above, you acknowledge that you will not receive, and are not entitled to any other pay/compensation/benefits/leave/time off you are due to date, including for overtime or vacation;

- This entire document was translated and read to you in your native language prior to your signing in the presence of your counsel;

- You have been given the opportunity to ask questions about this Agreement and all of your questions, if any, have been satisfactorily answered;

- You have consulted with an attorney before signing below; and

- You are signing this Agreement knowingly and voluntarily.

_____                    _____

Joshua Springer                                                      Date

On the ___ day of October in the year 2016 before me, the undersigned, personally appeared, Joshua Springer, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____

Notary Public

By: _____

Liberty Pest Specialists, Inc.

Name: RICHARD CAPPA

Title: AUTHORIZED SIGNATORY

5

**20. Other Representations.** You agree:

- You yourself actually performed work for Liberty as a pest exterminator during the times claimed in this lawsuit.

- You worked for Liberty from approximately April 2014 to August 2014.

- You did not work for Liberty under any other name.

- You no longer work for Liberty.

- You are signing this Agreement in your own legal name and not on behalf of someone else, and you have provided identification of your identity acceptable to Defendant.

- With the settlement payments noted above, you acknowledge that you will not receive, and are not entitled to any other pay/compensation/benefits/leave/time off you are due to date, including for overtime or vacation;

- This entire document was translated and read to you in your native language prior to your signing in the presence of your counsel;

- You have been given the opportunity to ask questions about this Agreement and all of your questions, if any, have been satisfactorily answered;

- You have consulted with an attorney before signing below; and

- You are signing this Agreement knowingly and voluntarily.

_Joshua Springer_        _10 / 7 / 2016_
Joshua Springer            Date

On the 7th day of October in the year 2016 before me, the undersigned, personally appeared, Joshua Springer, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_Sylvie Ble_
Notary Public

SYLVIE BLE
MY COMMISSION # 16007876
EXPIRES: August 17, 2020

By: _____
Liberty Pest Specialists, Inc.
Name:
Title:

5

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

### CHRISTOPHER ZAYAS-BAZAN

**1.**  **Parties**.  The parties to this Agreement are you, **CHRISTOPHER ZAYAS-BAZAN** (for yourself, your family, beneficiaries and anyone acting for you) (hereinafter "You" or "Plaintiff"), and Liberty Pest Specialists, Inc. d/b/a Liberty Pest Control ("Liberty" or "Defendant").

You and Defendant are presently parties to a lawsuit now pending before the U.S. District Court for the Eastern District of New York, Case No. 15-cv-5883 (SJ)(MDG) entitled Springer, et.al. v. Liberty Pest Specialists, Inc. d/b/a Liberty Pest Control (the "Lawsuit"). You and Defendant are interested in avoiding all further legal costs and disputes and in fully and expeditiously resolving all claims, charges, or issues of law or fact that were or could have been raised by you against Defendant as of the date you sign this Agreement.

**2.**  **Consideration**.  In complete settlement of all claims that you have or may have against Defendant and subject to the terms below, Liberty agrees to pay You the gross sum of $21,198.12 inclusive of all costs and attorneys' fees (the "Settlement Amount") to be paid as follows:

    **a.**  10% of the Settlement Amount within 10 days from the date of approval of this Settlement by the Court;

    **b.**  10% of the Settlement Amount within 1 month from the date of approval of this Settlement by the Court;

    **c.**  10% of the Settlement Amount within 2 months from the date of approval of this Settlement by the Court;

    **d.**  10% of the Settlement Amount within 3 months from the date of approval of this Settlement by the Court;

    **e.**  10% of the Settlement Amount within 4 months from the date of approval of this Settlement by the Court;

    **f.**  10% of the Settlement Amount within 5 months from the date of approval of this Settlement by the Court;

    **g.**  10% of the Settlement Amount within 6 months from the date of approval of this Settlement by the Court;

    **h.**  10% of the Settlement Amount within 7 months from the date of approval of this Settlement by the Court;

    **i.**  10% of the Settlement Amount within 8 months from the date of approval of this Settlement by the Court;

**j.** 10% of the Settlement Amount within 9 months from the date of approval of this Settlement by the Court;

and apportioned as follows:

- $6,852.06, minus applicable deductions and withholdings, for lost wages by check made payable to you.  Liberty will issue an IRS Form W-2 to you reflecting this payment.

- $6,852.06 for non-wage compensatory or liquidated damages.  Defendant's receipt of an IRS Form W-9 completed and executed by you is a condition precedent to this payment.  Liberty will issue an IRS Form 1099 to you reflecting this payment.

- $7,494.00 for attorney fees and costs, by check made payable to Hach Rose Schirripa & Cheverie LLP.  Defendant's receipt of an IRS Form W-9 completed and executed by Hach Rose Schirripa & Cheverie LLP is a condition precedent to this payment.  Liberty will issue an IRS Form 1099 to you and Hach Rose Schirripa & Cheverie LLP reflecting this payment.

You acknowledge that you have not relied on any statements or representations by Defendant or their attorneys with respect to the tax treatment of the payments described in this section.  If any taxing body determines that the tax treatment was incorrect and that greater amounts should have been withheld from any payment above (or any part thereof), you acknowledge and assume all responsibility for paying those amounts and further agree to indemnify and hold Defendant harmless for payment of any additional taxes and any interest and penalties thereon.

The parties warrant that they are not aware of any attorneys' liens placed on this matter.

You agree that the payments above are consideration for the promises by you contained herein and that Defendant were not otherwise obligated to make these payments.

Defendant's obligations to make the payments above shall become due thirty (30) business days after the later of: (i) Defendant receive this Agreement executed by you; (ii) Defendant's receive an order approving this settlement and dismissing the Lawsuit; and (iii) any applicable revocation period.

**3.   <u>Court Approval of Settlement Agreement.</u>**  The parties agree that the Court's approval of this Agreement as fair and reasonable and the subsequent dismissal of the Lawsuit with prejudice is a condition precedent to Defendant's promises in this Agreement.  You understand counsel will jointly submit a motion to the Court for approval of this settlement as fair and reasonable.

**4.   <u>General Release</u>.**

In consideration of the payments and benefits set forth in Section 3 above, Plaintiff hereby unconditionally and irrevocably releases, waives, discharges and gives up any and all claims against Defendant, their parent and affiliate companies, subsidiaries, divisions, business units, committees, groups, officers, directors, shareholders, employees, successors, assigns,

trustees, administrators, and executors (collectively referred to as "RELEASEES"), and releases and forever discharges the RELEASEES and their heirs, executors, administrators, successors, trustees, assigns, subsidiaries, officers, directors, shareholders, employees, legal representatives, and agents of each of them, from all actions, causes of action, and suits, which against the RELEASEES, Plaintiff or Plaintiff's heirs, executors, administrators, successors, and/or assigns, may now have or hereinafter can, shall or may have, for any claims that were brought or could have been brought by Plaintiff against Defendant in the Litigation, including, but not limited to, unpaid wages, minimum wage, overtime pay, expenses, salaries, benefits, commissions, bonuses, or any other work related compensation whatsoever from the beginning of the world to the date that an Order is signed by any presiding United States District Judge or United States Magistrate Judge authorizing the parties to settle this action based on the terms of this Agreement (hereinafter referred to as the "Effective Date"), including, but not limited to, those claims pertaining to severance pay or termination pay, and those arising under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., the New York Labor Law, any New York wage-hour and wage-payment laws, and/or any other federal, state or local wage-hour, wage-payment, or labor laws.

**5.**   **Release Exclusions/Individual Protections.**   This Agreement's release provisions exclude: claims arising after you sign this Agreement; claims for breach of this Agreement; and claims that cannot be waived, such as for unemployment or worker's compensation. Neither the release provisions above nor anything else in this Agreement limit your rights to file a charge with any administrative agency (such as the U.S. Equal Employment Opportunity Commission or a state fair employment practices agency), provide information to an agency, or otherwise participate in an agency investigation or other administrative proceeding. However, you give up all rights to any money or other individual relief based on any agency or judicial decision, including class or collective action rulings, except that you may receive money properly awarded by the U.S. Securities and Exchange Commission as a securities whistleblower incentive.

**6.**   **Promise Not To Sue.**   A "promise not to sue" means you promise not to sue any Releasee in court. This is different from the General Release above. Besides releasing claims covered by that General Release, you agree never to sue any Releasee for any reason covered by that General Release. Despite this Promise Not To Sue, however, you may file suit to enforce this Agreement or to challenge its validity under the ADEA. If you sue a Releasee in violation of this Agreement you shall be required to pay all resulting damages from your breach, as determined by a court or arbitrator. In that event, Defendant shall be excused from any remaining obligations that exist solely because of this Agreement.

**7.**   **Whistleblowing.**   You agree that beyond the allegations contained in the Complaint: (i) no one interfered with your ability to report within Liberty possible violations of any law, and (ii) it was Liberty's policy throughout your employment to encourage such reporting.

**8.**   **Return of Company Property.**   You have returned (or you will before receiving any settlement payments described above) all Liberty's property you possessed or controlled, including but not limited to any confidential information, business equipment, credit cards, keys, software or work product. Liberty's property includes all originals plus hard copies and electronic versions of all documents, such as e-mails, facsimiles, files, handbooks, letters, manuals, memoranda, power points, records and reports.

3

**9.   Non-Disparagement.**   Once you have signed this Agreement, you will not do or say anything, directly or indirectly, that disparages, reflects negatively on, or otherwise detrimentally affects Liberty, it's officers, owners, employees, products or its services.

**10. Non-Admission.**   Neither Defendant's offer reflected in this Agreement nor any payment under this Agreement are an admission that you have a viable claim against Defendant or any other Releasee.  Each Releasee denies all liability.

**11. Applicable Law.**  This Agreement shall be interpreted under federal law if that law governs, and otherwise under the laws of the State of New York, without regard to its choice of law provisions.

**12. Dispute Resolution.**   Any dispute regarding this Agreement will be resolved in the United States District Court for the Eastern District of New York.

**13. Enforceability.**  If a court finds any part of this Agreement unenforceable, that part shall be modified and the rest enforced, except that if a court finds paragraphs 4 or 6 unenforceable, then none of the remaining obligations on Defendant shall be enforced, and monies paid in settlement shall be subject to return to Defendant.   If a court finds any such part incapable of being modified, it shall be severed and the rest enforced, except that if a court finds paragraphs 4 or 6 unenforceable as written, then none of the remaining obligations on Defendant shall be enforced, and monies paid in settlement shall be subject to return to Defendant. A decision not to enforce this Agreement does not waive any future violation.

**14. Enforcement.**  Nothing in this Agreement limits either party's right to obtain preliminary or permanent injunctive relief if either party breaches this Agreement, plus any additional relief determined to be appropriate.

**15. Medicare Secondary Payer.**  Both parties represent that none of the monies paid under this Agreement are for (i) payment of medical expenses incurred by you, or (ii) injuries for which you have received or can receive Medicare or Medicaid benefits.   Nothing in this Agreement prevents either party from: (i) communicating information about this Agreement for compliance purposes under the Medicare Secondary Payer law or the Medicare, Medicaid, and SCHIP Extension Act of 2007; or (ii) otherwise complying with these laws.

**16. Entire Agreement.**   This Agreement is the complete understanding between you and Defendant.  It replaces any other agreements, representations or promises, written or oral .

**17. Time to Consider.**  You have been given 21 days to consider this Agreement. You must sign and return this Agreement to Defendant in the time given if you want to get the separation pay/benefits listed at the beginning of this Agreement.

**18. Time to Revoke.**  After you sign this Agreement, you have 7 days to revoke it by providing written notice to Defendant's representative signing below.   This Agreement is not effective or enforceable until the revocation period expires, and your counsel notifies counsel for Defendant in writing that you have elected to not revoke the Agreement.   You hereby authorize your counsel to make such representation on your behalf.  If you revoke this Agreement, you will not receive the pay/benefits listed at the beginning of this Agreement.

**19. <u>Neutral Reference</u>.** Liberty's response to a reference request will be limited to your employment dates and last position.

**20. <u>Other Representations</u>.** You agree:

- You yourself actually performed work for Liberty as a pest exterminator during the times claimed in this lawsuit.

- You worked for Liberty from approximately June 2014 to April 2014.

- You did not work for Liberty under any other name.

- You no longer work for Liberty.

- You are signing this Agreement in your own legal name and not on behalf of someone else, and you have provided identification of your identity acceptable to Defendant.

- With the settlement payments noted above, you acknowledge that you will not receive, and are not entitled to any other pay/compensation/benefits/leave/time off you are due to date, including for overtime or vacation;

- This entire document was translated and read to you in your native language prior to your signing in the presence of your counsel;

- You have been given the opportunity to ask questions about this Agreement and all of your questions, if any, have been satisfactorily answered;

- You have consulted with an attorney before signing below; and

- You are signing this Agreement knowingly and voluntarily.

_____          _____
**CHRISTOPHER ZAYAS-BAZAN**                         Date

On the ___ day of October in the year 2016 before me, the undersigned, personally appeared, **CHRISTOPHER ZAYAS-BAZAN**, personally known to me or proved to me on the basis of satisfactory   evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public
By: _____
Liberty Pest Specialists, Inc.
Name:   RICHARD GAPPA
Title:   AUTHORIZED SIGNATORY

5

**19. Neutral Reference.** Liberty's response to a reference request will be limited to your employment dates and last position.

**20. Other Representations.** You agree:

- You yourself actually performed work for Liberty as a pest exterminator during the times claimed in this lawsuit.

- You worked for Liberty from approximately June 2014 to April 2014.

- You did not work for Liberty under any other name.

- You no longer work for Liberty.

- You are signing this Agreement in your own legal name and not on behalf of someone else, and you have provided identification of your identity acceptable to Defendant.

- With the settlement payments noted above, you acknowledge that you will not receive, and are not entitled to any other pay/compensation/benefits/leave/time off you are due to date, including for overtime or vacation;

- This entire document was translated and read to you in your native language prior to your signing in the presence of your counsel;

- You have been given the opportunity to ask questions about this Agreement and all of your questions, if any, have been satisfactorily answered;

- You have consulted with an attorney before signing below; and

- You are signing this Agreement knowingly and voluntarily.

CHRISTOPHER ZAYAS-BAZAN                    10/14/16
                                                                        Date

On the ___ day of October in the year 2016 before me, the undersigned, personally appeared, **CHRISTOPHER ZAYAS-BAZAN**, personally known to me or proved to me on the basis of satisfactory   evidence to be the individual whose name is subscribed  to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

By: _____
Liberty Pest Specialists, Inc.
Name:
Title:

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

### HENRY SANCHEZ

**1.** **Parties**.  The parties to this Agreement are you, **HENRY SANCHEZ** (for yourself, your family, beneficiaries and anyone acting for you) (hereinafter "You" or "Plaintiff"), and Liberty Pest Specialists, Inc. d/b/a Liberty Pest Control ("Liberty" or "Defendant").

You and Defendant are presently parties to a lawsuit now pending before the U.S. District Court for the Eastern District of New York, Case No. 15-cv-5883 (SJ)(MDG) entitled Springer, et.al. v. Liberty Pest Specialists, Inc. d/b/a Liberty Pest Control (the "Lawsuit").  You and Defendant are interested in avoiding all further legal costs and disputes and in fully and expeditiously resolving all claims, charges, or issues of law or fact that were or could have been raised by you against Defendant as of the date you sign this Agreement.

**2.** **Consideration.**  In complete settlement of all claims that you have or may have against Defendant and subject to the terms below, Liberty agrees to pay You the gross sum of $8,206.91, inclusive of all costs and attorneys' fees (the "Settlement Amount") to be paid as follows:

    **a.** 10% of the Settlement Amount within 10 days from the date of approval of this Settlement by the Court;

    **b.** 10% of the Settlement Amount within 1 month from the date of approval of this Settlement by the Court;

    **c.** 10% of the Settlement Amount within 2 months from the date of approval of this Settlement by the Court;

    **d.** 10% of the Settlement Amount within 3 months from the date of approval of this Settlement by the Court;

    **e.** 10% of the Settlement Amount within 4 months from the date of approval of this Settlement by the Court;

    **f.** 10% of the Settlement Amount within 5 months from the date of approval of this Settlement by the Court;

    **g.** 10% of the Settlement Amount within 6 months from the date of approval of this Settlement by the Court;

    **h.** 10% of the Settlement Amount within 7 months from the date of approval of this Settlement by the Court;

    **i.** 10% of the Settlement Amount within 8 months from the date of approval of this Settlement by the Court;

    **j.** 10% of the Settlement Amount within 9 months from the date of approval of this Settlement by the Court;

and apportioned as follows:

- $2,500.00, minus applicable deductions and withholdings, for lost wages by check made payable to you. Liberty will issue an IRS Form W-2 to you reflecting this payment.

- $2,500.00 for non-wage compensatory or liquidated damages. Defendant's receipt of an IRS Form W-9 completed and executed by you is a condition precedent to this payment. Liberty will issue an IRS Form 1099 to you reflecting this payment.

- $3,206.91 for attorney fees and costs, by check made payable to Hach Rose Schirripa & Cheverie LLP. Defendant's receipt of an IRS Form W-9 completed and executed by Hach Rose Schirripa & Cheverie LLP is a condition precedent to this payment. Liberty will issue an IRS Form 1099 to you and Hach Rose Schirripa & Cheverie LLP reflecting this payment.

You acknowledge that you have not relied on any statements or representations by Defendant or their attorneys with respect to the tax treatment of the payments described in this section. If any taxing body determines that the tax treatment was incorrect and that greater amounts should have been withheld from any payment above (or any part thereof), you acknowledge and assume all responsibility for paying those amounts and further agree to indemnify and hold Defendant harmless for payment of any additional taxes and any interest and penalties thereon.

The parties warrant that they are not aware of any attorneys' liens placed on this matter.

You agree that the payments above are consideration for the promises by you contained herein and that Defendant were not otherwise obligated to make these payments.

Defendant's obligations to make the payments above shall become due thirty (30) business days after the later of: (i) Defendant receive this Agreement executed by you; (ii) Defendant's receive an order approving this settlement and dismissing the Lawsuit; and (iii) any applicable revocation period.

**3.   Court Approval of Settlement Agreement.**  The parties agree that the Court's approval of this Agreement as fair and reasonable and the subsequent dismissal of the Lawsuit with prejudice is a condition precedent to Defendant's promises in this Agreement. You understand counsel will jointly submit a motion to the Court for approval of this settlement as fair and reasonable.

**4.   General Release.**

In consideration of the payments and benefits set forth in Section 3 above, Plaintiff hereby unconditionally and irrevocably releases, waives, discharges and gives up any and all claims against Defendant, their parent and affiliate companies, subsidiaries, divisions, business units, committees, groups, officers, directors, shareholders, employees, successors, assigns, trustees, administrators, and executors (collectively referred to as "RELEASEES"), and releases and forever discharges the RELEASEES and their heirs, executors, administrators, successors, trustees, assigns, subsidiaries, officers, directors, shareholders, employees, legal representatives,

2

and agents of each of them, from all actions, causes of action, and suits, which against the RELEASEES, Plaintiff or Plaintiff's heirs, executors, administrators, successors, and/or assigns, may now have or hereinafter can, shall or may have, for any claims that were brought or could have been brought by Plaintiff against Defendant in the Litigation, including, but not limited to, unpaid wages, minimum wage, overtime pay, expenses, salaries, benefits, commissions, bonuses, or any other work related compensation whatsoever from the beginning of the world to the date that an Order is signed by any presiding United States District Judge or United States Magistrate Judge authorizing the parties to settle this action based on the terms of this Agreement (hereinafter referred to as the "Effective Date"), including, but not limited to, those claims pertaining to severance pay or termination pay, and those arising under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., the New York Labor Law, any New York wage-hour and wage-payment laws, and/or any other federal, state or local wage-hour, wage-payment, or labor laws.

**5.    Release Exclusions/Individual Protections.**  This Agreement's release provisions exclude: claims arising after you sign this Agreement; claims for breach of this Agreement; and claims that cannot be waived, such as for unemployment or worker's compensation. Neither the release provisions above nor anything else in this Agreement limit your rights to file a charge with any administrative agency (such as the U.S. Equal Employment Opportunity Commission or a state fair employment practices agency), provide information to an agency, or otherwise participate in an agency investigation or other administrative proceeding. However, you give up all rights to any money or other individual relief based on any agency or judicial decision, including class or collective action rulings, except that you may receive money properly awarded by the U.S. Securities and Exchange Commission as a securities whistleblower incentive.

**6.    Promise Not To Sue.**  A "promise not to sue" means you promise not to sue any Releasee in court.  This is different from the General Release above.  Besides releasing claims covered by that General Release, you agree never to sue any Releasee for any reason covered by that General Release.  Despite this Promise Not To Sue, however, you may file suit to enforce this Agreement or to challenge its validity under the ADEA.  If you sue a Releasee in violation of this Agreement you shall be required to pay all resulting damages from your breach, as determined by a court or arbitrator.  In that event, Defendant shall be excused from any remaining obligations that exist solely because of this Agreement.

**7.    Whistleblowing.**  You agree that beyond the allegations contained in the Complaint: (i) no one interfered with your ability to report within Liberty possible violations of any law, and (ii) it was Liberty's policy throughout your employment to encourage such reporting.

**8.    Return of Company Property.**  You have returned (or you will before receiving any settlement payments described above) all Liberty's property you possessed or controlled, including but not limited to any confidential information, business equipment, credit cards, keys, software or work product.  Liberty's property includes all originals plus hard copies and electronic versions of all documents, such as e-mails, facsimiles, files, handbooks, letters, manuals, memoranda, power points, records and reports.

**9.    Non-Disparagement.**  Once you have signed this Agreement, you will not do or say anything, directly or indirectly, that disparages, reflects negatively on, or otherwise detrimentally affects Liberty, it's officers, owners, employees, products or its services.

3

**10. <u>Non-Admission</u>.** Neither Defendant's offer reflected in this Agreement nor any payment under this Agreement are an admission that you have a viable claim against Defendant or any other Releasee. Each Releasee denies all liability.

**11. <u>Applicable Law</u>.** This Agreement shall be interpreted under federal law if that law governs, and otherwise under the laws of the State of New York, without regard to its choice of law provisions.

**12. <u>Dispute Resolution</u>.** Any dispute regarding this Agreement will be resolved in the United States District Court for the Eastern District of New York.

**13. <u>Enforceability</u>.** If a court finds any part of this Agreement unenforceable, that part shall be modified and the rest enforced, except that if a court finds paragraphs 4 or 6 unenforceable, then none of the remaining obligations on Defendant shall be enforced, and monies paid in settlement shall be subject to return to Defendant. If a court finds any such part incapable of being modified, it shall be severed and the rest enforced, except that if a court finds paragraphs 4 or 6 unenforceable as written, then none of the remaining obligations on Defendant shall be enforced, and monies paid in settlement shall be subject to return to Defendant. A decision not to enforce this Agreement does not waive any future violation.

**14. <u>Enforcement</u>.** Nothing in this Agreement limits either party's right to obtain preliminary or permanent injunctive relief if either party breaches this Agreement, plus any additional relief determined to be appropriate.

**15. <u>Medicare Secondary Payer</u>.** Both parties represent that none of the monies paid under this Agreement are for (i) payment of medical expenses incurred by you, or (ii) injuries for which you have received or can receive Medicare or Medicaid benefits. Nothing in this Agreement prevents either party from: (i) communicating information about this Agreement for compliance purposes under the Medicare Secondary Payer law or the Medicare, Medicaid, and SCHIP Extension Act of 2007; or (ii) otherwise complying with these laws.

**16. <u>Entire Agreement</u>.** This Agreement is the complete understanding between you and Defendant. It replaces any other agreements, representations or promises, written or oral .

**17. <u>Time to Consider</u>.** You have been given 21 days to consider this Agreement. You must sign and return this Agreement to Defendant in the time given if you want to get the separation pay/benefits listed at the beginning of this Agreement.

**18. <u>Time to Revoke</u>.** After you sign this Agreement, you have 7 days to revoke it by providing written notice to Defendant's representative signing below. This Agreement is not effective or enforceable until the revocation period expires, and your counsel notifies counsel for Defendant in writing that you have elected to not revoke the Agreement. You hereby authorize your counsel to make such representation on your behalf. If you revoke this Agreement, you will not receive the pay/benefits listed at the beginning of this Agreement.

**19. <u>Neutral Reference</u>.** Liberty's response to a reference request will be limited to your employment dates and last position.

4

**20.** **Other Representations.** You agree:

- You yourself actually performed work for Liberty as a pest exterminator during the times claimed in this lawsuit.

- You worked for Liberty from approximately February 2014 to December 2014.

- You did not work for Liberty under any other name.

- You no longer work for Liberty.

- You are signing this Agreement in your own legal name and not on behalf of someone else, and you have provided identification of your identity acceptable to Defendant.

- With the settlement payments noted above, you acknowledge that you will not receive, and are not entitled to any other pay/compensation/benefits/leave/time off you are due to date, including for overtime or vacation;

- This entire document was translated and read to you in your native language prior to your signing in the presence of your counsel;

- You have been given the opportunity to ask questions about this Agreement and all of your questions, if any, have been satisfactorily answered;

- You have consulted with an attorney before signing below; and

- You are signing this Agreement knowingly and voluntarily.

_____        _____
**HENRY SANCHEZ**                                              Date

On the ___ day of October in the year 2016 before me,   the undersigned, personally appeared, **HENRY SANCHEZ**, personally known to me or proved to me on the basis of satisfactory  evidence to be the individual whose name is subscribed  to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

By: _____

Liberty Pest Specialists, Inc.
Name: RICHARD CAPPA
Title: AUTHORIZED SIGNATORY

5

20. <u>Other Representations</u>. You agree:

- You yourself actually performed work for Liberty as a pest exterminator during the times claimed in this lawsuit.

- You worked for Liberty from approximately February 2014 to December 2014.

- You did not work for Liberty under any other name.

- You no longer work for Liberty.

- You are signing this Agreement in your own legal name and not on behalf of someone else, and you have provided identification of your identity acceptable to Defendant.

- With the settlement payments noted above, you acknowledge that you will not receive, and are not entitled to any other pay/compensation/benefits/leave/time off you are due to date, including for overtime or vacation;

- This entire document was translated and read to you in your native language prior to your signing in the presence of your counsel;

- You have been given the opportunity to ask questions about this Agreement and all of your questions, if any, have been satisfactorily answered;

- You have consulted with an attorney before signing below; and

- You are signing this Agreement knowingly and voluntarily.

_____          10/11/16
**HENRY SANCHEZ**                         Date

On the 11th day of October in the year 2016 before me,  the undersigned, personally appeared, **HENRY SANCHEZ**, personally known to me or proved to me on the basis of satisfactory   evidence to be the individual whose name is subscribed  to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

By:_____
Liberty Pest Specialists, Inc.
Name:
Title:

JORDAN G. DONNER
Notary Public, State of New York
No. 01DO6332241
Qualified in Queens County
Commission Expires October 28, 2019